[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 549
The plaintiff, K.T.W., Inc., brings this action seeking money damages for losses it claims to have suffered as a result of the action of the defendant, CSB Financial Corporation ("CSB") in pursuing its security interest in the property of another corporation, Keegan Machine Manufacturing, Inc. ("KMF"), since 1989, this court has had occasion to rule on various other aspects of the claims between and among these entities in a series of cases that commenced with CSB's attachment of the personal property of KMF in 1989.
It is useful to set forth the facts before describing the plaintiff's claims.
Beginning in 1984 or 1985, Connecticut Savings Bank began to lend money to KMF, a machine shop which made parts for various aerospace companies. Connecticut Savings Bank eventually assigned these obligations to the defendant, from whom KMF borrowed more money over the years, to the extent that in November 1989 it owed the defendant nearly $4 million. To secure its loan, the defendant had a security interest in the inventory, equipment, receivables and "general intangibles" of KMF pursuant to a duly executed security agreement. In November 1989, KMF was an approved vendor for Pratt Whitney and other aerospace industry customers and had orders for goods.
In November 1989, CSB attached the personal property of KMF, locking up the premises from which it conducted its manufacturing business. During the six weeks immediately following this seizure of the collateral, CSB tried to sell the business as a going concern, however, it made no provisions to fill the orders for goods which KMF had been working on at the time of the seizure. John Keegan, III, (Keegan) the son of the major shareholder in KMF, decided to set up a new business and to try to secure from Pratt Whitney the orders which were going unfilled by KMF. Keegan incorporated the plaintiff, KTW, Inc., and entered into an oral contract with another machine shop, Stamford Tool and Die Company ("Stamford Tool") which had excessive capacity, to rent the space, machinery and some labor needed to work on KTW's orders.
CSB suspected that Keegan was appropriating assets of KMF that were subject to its security interest for the benefit of CT Page 550 KTW, and it hired an investigator who reported that items belonging to KMF were taken to Stamford Tool. CSB filed an action against Keegan, Stamford Tool, and others, in which it asserted, inter alia, that certain parts, known as clevises, that were being worked on at Stamford Tool were the property of KMF and were subject to its security interest. This court, though it had enjoined Keegan and others from interfering with CSB's security interest by removing KMF's property, made a finding in CSB's replevin action, CSB Financial Corporation v. John F. Keegan, Jr. et al, CV90-29663, that CSB had not established probable cause that the clevises brought by KTW to Stamford Tool were the property of KMF and that it appeared that they had been independently acquired by KTW as part of its effort to get the orders left unfilled upon the cessation of operation of KMF. 11 (Ex. A, Memorandum of Decision, March 16, 1990). This finding was made upon the defendants' motion to dissolve a pre-Doehr ex parte replevin order.
Pending adjudication of ownership of the clevises, KTW did no work at Stamford Tool. Stamford Tool thereafter, in March 1990, resumed providing space and machinery to KTW to work on three orders it had obtained from Pratt and Whitney.
On May 25, 1990, CSB deposed Ralph Palermo, president of Stamford Tool. The deposition was noticed for use in CSB Financial Corporation v. John F. Keegan, Jr. et al, CV90-296635, the case in which the court had found that the plaintiff had not demonstrated probable cause upon its application for a prejudgment replevin of items in use at Stamford Tool's premises. The complaint in that case sought replevin of assets that it alleged had been removed from the premises of KMF and that were the subject of a security interest by CSB.
Mr. Palermo testified that Stamford Tool ended its relationship with KTW "on the basis of the deposition" because it was not "comfortable" with KTW because of the uncertainty created by CSB's claim that KTW was in possession of assets that belonged to KMF.
KTW tried to find another facility where it could work or completing its orders for machined parts; however, it was unable to make the necessary arrangements before Pratt Whitney placed its three orders elsewhere.
The plaintiff claims in the First and Second Counts of its CT Page 551 Amended Complaint that the actions of the defendant with respect to the deposition of Mr. Palermo "amount to one or more of the following:
a) fraud
b) misrepresentation
c) intimidation
d) molestation or maliciousness"
The plaintiff characterizes the First and Second Counts as asserting a cause of action for tortious interference with a business expectancy and with a business relationship, and the defendant has filed a trial brief indicating an understanding that such are the doctrines involved in these counts.
In the Third count of the Amended Complaint, the plaintiff claims that the defendant used its replevin action for purposes "other than its intended purpose" and thereby abused legal process. The Fourth Count of the complaint alleges a violation of the Connecticut Unfair Trade Practice Act, 42-110a C.G.S. et seq. ("CUTPA") on the theory that the defendant used legal process for other than its intended purpose, interfered with a business contract of the plaintiff and interfered with a business expectancy of the plaintiff.
TORTIOUS INTERFERENCE
The plaintiff established that Stamford Tool was initially willing to provide it with the location and equipment necessary to fulfill orders from Pratt Whitney and that there was an oral agreement to do so. The plaintiff also established that, although Stamford Tool was a bit leery of the arrangement after the prejudgment replevin in February 1990 of the clevises that were being machined on its premises, the relationship continued on the basis that Keegan would provide evidence of his ownership of items brought to the premises. The evidence establishes that the plaintiff had an expectancy that the business relationship with Stamford Tool would continue and that it would be able to fulfill its orders at the premises of Stamford Tool, but that Stamford Tool decided to stop doing business with KTW after and as a result of the deposition of Ralph Palermo on May 25, 1990. CT Page 552
To prevail on a cause of action for tortious interference with a business expectancy, a plaintiff must prove that the defendant engaged in fraud, misrepresentation, intimidation or molestation. Robert S. Weiss Associates, Inc. v. Wiederlight,208 Conn. 525, 535-6 (1988); Sportsmen's Boating Corporation v. Hensley, 192 Conn. 747, 754 (1984); Busker v. United Illuminating Co., 156 Conn. 456, 461 (1968); or that the defendant acted maliciously. Blake v. Levy, 191 Conn. 257, 261 (1983); Goldman v. Feinberg, 130 Conn. 671, 674 (1944). The Connecticut Supreme Court in Blake v. Levy, supra, 264, n. 3, cited with approval authorities to the effect that litigation or the threat of litigation will not support a cause of action for tortious interference with business relations "when pursued in good faith to protect the actor's own interests," (ostensibly, interests independent of any interest in interfering with a business expectancy of the other party). Here, CSB had an interest in protecting from misappropriation items in which it had a security interest. The plaintiff does not claim that CSB failed to state a cognizable cause of action.
The deposition at issue was noticed as part of a suit, CV90-296635, brought by CSB to replevy from Keegan and others items that CSB claimed were subject to its security interest with KMF. The Stamford Tool and Die was a party to that action. Upon examining the transcript of the deposition, the court finds that, although the questioning was circuitous and disorganized, neither the content nor form of the questioning can be characterized as intimidating, threatening or indicative of goals other than discovery in aid of the replevin action.
Though many of the questions concerned Stamford Tool's formation of business relationships with KTW and others, the context appeared sufficiently to be geared to discovery of a motive to receive and/or conceal assets of KMF, pursued by related inquiry into Mr. Palermo's knowledge of any links between the assets of KMF and those of KTW. As a result of the efforts, of its investigator, CSB had in its possession documents revealing a contemplated joint venture between KTW and Stamford Tool not to seek new business, but to fulfill the business orders of KMF. While the duration and inconvenience of the deposition may have convinced Mr. Palermo that involvement with KTW was more trouble than it was worth, the court does not find that. the conduct of the deposition was calculated to intimidate Palermo or Stamford Tool or that the deposition was prolonged or conducted in a burdensome manner with the aim or discouraging Stamford Tool CT Page 553 from dealing with KTW. Stamford Tool had already, before the deposition, asked KTW for assurance as to the ownership of items brought to its premises, and Stamford Tool had experienced a visit by sheriffs to replevy property and had been named as a defendant in CSB Financial v. Keegan, the replevin suit.
Mr. Palermo did not indicate that he felt intimidated at the deposition nor that he was being spuriously threatened with claims other than the claim that his company might be holding assets that were subject to CSB's security agreement with KMF. Further, the court finds that the reason Stamford Tool withdrew from its contract with KTW was the likelihood that CSB was going to pursue its position, grounded in the work of its investigator, that Keegan had taken assets of KMF and was using them at Stamford Tool for the benefit of KTW. since its investigator had seen materials from KMF storage being taken into Stamford Tool's premises, it was not unreasonable for CSB to depose Mr. Palermo to try to obtain evidence as to what had been taken; and CSB was not required to limit its questions to a direct inquiry concerning KMF materials but was entitled to probe into facts likely to defect the credibility of the denial that such transfers had been made.
The inefficient manner in which the deposition was conducted does not constitute fraud, intimidation, or molestation, nor does it appear that CSB engaged in misrepresentation in the course of the deposition. Though CSB may have been misguided in its impression that vendor codes were transferable assets, the plaintiff has not demonstrated that CBS knew its error but engaged in the deposition merely to harass Stamford Tool, nor that it acted with malice or in bad faith in the manner in which it conducted a deposition within the realm of permissible discovery efforts.
The holding of a deposition certainly alerted Stamford Tool and its officers as to just how protracted the conflict between CSB and the Keegans was likely to be. This information may have affected Stamford Tool's willingness to continue to deal with KTW; however, it has not been demonstrated that the resulting interference was tortious within the meaning of the cases cited above.
ABUSE OF PROCESS
In the Third Count of its complaint, the plaintiff claims CT Page 554 that the defendant abused court process "as it is using a replevin action for other than its intended purpose." It is quite likely that CSB was misguided in its impression that vendor codes and pending orders were assets of KMF that had transferable value and that had been misappropriated by Keegan. It is also questionable whether CSB had anything actual to gain by its hot pursuit of these items, when it was not engaged in any effort to operate KMF and to try to fill its pending orders while it sought to sell the business.
When a litigant engages in litigation of negligible practical value, an inference may be drawn that the real purpose of the litigation is some ulterior goal. Here, however, the plaintiff has not even attempted to articulate in the allegations of Count Three of the Amended Complaint, what that goal was, and the court will not supply a theory where the pleadings state none.
To the extent that the plaintiff claims that the "real" purpose of the replevin action was to discourage Stamford Tool from doing business with KTW, the court's findings as to the first and second counts defeat that theory. CSB had received an investigator's report to the effect that KMF property was being stored in secret in a storage facility from which members of the Keegan family took items to a machine shop, Stamford Tool. A replevin action was a proper proceeding to attempt to discover what had been taken and to secure its return. The tort of abuse of process requires proof that legal process has been used in "an improper manner or to accomplish a purpose for which it was not designed." Varga v. Parelis, 137 Conn. 663, 667 (1951); Lewis Truck Trailer, Inc. v. Jandreau, 11 Conn. Sup. 168 (1987); 3 Restatement (Second) Torts 682. CSB's failure to convince the court that materials replevined from the premises of Stamford Tool would probably be found to be subject to its security interest establishes only a lack of success, not an abuse of process to accomplish some purpose other than the goal asserted.
CUTPA CLAIM
The plaintiff alleges in its fourth count of the complaint that the deposition of Mr. Palermo constituted a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), 42-110B C.G.S. That statute prohibits use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. In determining whether an act or practice is unfair CT Page 555 and violative of CUTPA, the court must determine whether the practice 1) offends public policy as it has been established by statutes or the common law or some established standard of legality; 2) whether it is unethical, immoral oppressive or unscrupulous, or 3) whether it causes substantial in jury to consumers. Cheshire Mortgage Service, Inc. v. Monks, 223 Conn. 80,105-6 (1992); Conaway v. Prestia, 191 Conn. 484, 492-3
(1983), quoting FTC v. Sperry Hutchinson Co., 405 U.S. 233,244-45 n. 5 (1972).
The plaintiff's claim rests on its claim in Counts One, Two and Three that the taking of the deposition of Ralph Palermo constituted a tortious interference with business expectancy and relationship and/or abuse of process. Having found no liability under either of these common law claims, the court finds that the plaintiff has failed to establish the first type of CUTPA violation set forth above.
While the holding of lengthy, disorganized depositions is undesirable, the court does not find that this conduct by the defendant's counsel was part of a tactic to oppress. The plaintiff does not argue that the actions at issue caused injury to consumers, and that source of CUTPA liability is likewise inapplicable.
CONCLUSION
The plaintiff has failed to prove any of its claims. Judgment shall enter in favor of the defendant, which shall recover its statutory court costs.
Beverly J. Hodgson Judge of the Superior Court